IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**RAMÓN ORTIZ-OSORIO**, *et al.*,

   Plaintiffs,

v.

**MUNICIPALITY OF LOÍZA**,

   Defendant.

Civil No. 13-1352 (BJM)

## OPINION AND ORDER

This is an action under the citizen suit provision of the Clean Water Act ("CWA" or "Act"), 33 U.S.C. §§ 1251–1387. Ramón Ortiz Osorio ("Ortiz"), Eric Cruz Negrón, and José M. Landrau seek a declaratory judgment, injunctive relief, and the imposition of civil penalties against the Municipality of Loíza ("Municipality"),[1] alleging that it has failed to comply with the terms of its National Pollutant Discharge Elimination System ("NPDES") permit. Plaintiffs moved for partial summary judgment, solely as to the requested declaratory and injunctive remedies. Docket No. 23 ("Mot."). The Municipality opposed, Docket No. 28 ("Opp."), and plaintiffs replied, Docket No. 33 ("Reply"). The parties have consented to proceed before a magistrate judge. Docket Nos. 12, 13. For the reasons below, plaintiffs' motion for partial summary judgment is **denied**.

## STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" only if it "is one that could be resolved in favor of either party," *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004); a fact is "material" only if it "might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The initial burden on summary

---

[1] Plaintiffs' claim against another defendant, Eddie M. Manzo, in his official capacity as Mayor of the Municipality, was dismissed. Docket No. 20.

judgment lies always with the moving party; it is tasked with "informing the district court of the basis for its motion, and identifying those portions" of materials in the record "which it believes demonstrate the absence" of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Where, as in the usual case, the moving party would not at trial be saddled with the burden of proof, it may discharge this threshold responsibility in two ways, either by producing evidence negating an essential element of the nonmoving party's claim, *Carmona v. Toledo*, 215 F.3d 124, 132 (1st Cir. 2000), or by showing "that there is an absence of evidence to support the nonmoving party's case," *Celotex*, 477 U.S. at 325; *see* Fed. R. Civ. P. 56(c)(1)(B). Once that bar is cleared, "the burden shifts to the summary judgment target to demonstrate that a trialworthy issue exists," *Plumley v. S. Container, Inc.*, 303 F.3d 364, 368 (1st Cir. 2002), by "affirmatively point[ing] to specific facts" in the record revealing the presence of a meaningful dispute, *McCarthy v. Nw. Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995). Where, on the other hand, the moving party itself bears the ultimate burden of proof, it is not enough to point to an insufficient showing by the opposition. The moving party must make an affirmative case and "cannot attain summary judgment unless the evidence that [it] provides . . . is conclusive." *Torres Vargas v. Santiago Cummings*, 149 F.3d 29, 35 (1st Cir. 1998). Thus "an absence of evidence on a critical issue weighs against the party—be it the movant or the nonmovant—[that] would bear the burden of proof on that issue at trial." *Perez v. Volvo Car Corp.*, 247 F.3d 303, 310 (1st Cir. 2001).

In assaying the parties' submissions, the court does not act as trier of fact and so cannot "superimpose [its] own ideas of probability and likelihood (no matter how reasonable those ideas may be) upon" conflicting evidence. *Greenburg v. P.R. Mar. Shipping Auth.*, 835 F.2d 932, 936 (1st Cir. 1987). It must, rather, "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990). But the nonmoving party "must do more than simply show that there is some metaphysical doubt as

to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and may not escape on the back of "conclusory allegations, improbable inferences, and unsupported speculation," *Medina-Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990).

## BACKGROUND

### I. Statutory and Regulatory Framework

Congress enacted the CWA in 1972 "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). Under the Act, pollutants generally may not be discharged into the waters of the United States without an NPDES permit. 33 U.S.C. §§ 1311(a), 1342. In 1987, the CWA was amended, through the enactment of § 402(p), 33 U.S.C. § 1342(p), to more particularly address the problem of pollution conveyed into surface waters via stormwater runoff. Section 402(p) establishes an NPDES permit requirement for certain stormwater discharges, 33 U.S.C. § 1342(p)(2), and directs the Environmental Protection Agency ("EPA") to designate others for regulation under a comprehensive scheme of the EPA's design, 33 U.S.C. § 1342(p)(6). As directed, in 1999 the EPA promulgated regulations for a class of small municipal separate storm sewer systems ("small MS4s") not already covered by § 402(p) and previous EPA regulations.[2] *See* Regulations for Revision of the Water Pollution Control Program Addressing Storm Water Discharges, 64 Fed. Reg. 68,722 (Dec. 8, 1999) (codified at 40 C.F.R. pts. 9, 122, 123, and 124).

Under these regulations, operators of designated small MS4s must seek authorization under an NPDES permit to discharge stormwater. 40 C.F.R. §§ 122.32, 122.33(a). There are a number of ways for small MS4 operators to obtain permit coverage. As relevant here, the

---

[2] A municipal separate storm sewer is "a conveyance or system of conveyances (including roads with drainage systems, municipal streets, catch basins, curbs, gutters, ditches, man-made channels, or storm drains) . . . [o]wned or operated by a . . . public body . . . having jurisdiction over disposal of sewage, industrial wastes, storm water, or other wastes, . . . [d]esigned or used for collecting or conveying storm water," but not for conveying or treating sewage. 40 C.F.R. § 122.26(b)(8). "Small" MS4s are, basically, all municipal separate storm sewers not located in an incorporated place with a population of at least 100,000. 40 C.F.R. § 122.26(b)(4), (7), (16)–(17).

operator may submit a notice of intent ("NOI") to comply with an applicable general permit issued by the permitting authority. 40 C.F.R. § 122.33(b)(1). General small MS4 permits require, "at a minimum," that the operator "develop, implement, and enforce a storm water management program designed to reduce the discharge of pollutants from [its] MS4 to the maximum extent practicable." 40 C.F.R. § 122.34(a); 40 C.F.R. § 123.35(f). The storm water management program ("SWMP") must include six "minimum control measures," sub-programs crafted to (1) educate the public about the impacts of stormwater discharges, (2) solicit the involvement of the public in the development and implementation of the SWMP, (3) detect and eliminate illicit discharges to the MS4, (4) minimize the pollution in discharges from certain construction activities, (5) minimize the pollution in discharges from certain development and redevelopment projects, and (6) prevent or reduce pollutant runoff from municipal operations. 40 C.F.R. § 122.34(b)(1)–(6). Operators must also comply with certain recordkeeping requirements and must make their records, including a description of their SWMP, available to the public. 40 C.F.R. § 122.34(g)(2).

The terms of NPDES permits are enforceable. Private citizens may commence civil actions under § 505 of the CWA against any person, including a governmental instrumentality or agency, alleged to be in violation of "an effluent standard or limitation." 33 U.S.C. § 1365(a)(1). "Effluent standard or limitation" is defined to include, among other things, an NPDES permit or permit condition. 33 U.S.C. § 136(f)(6). The court may, if the citizen plaintiff prevails, enforce the relevant effluent standard or limitation, order injunctive relief, and impose civil penalties. 33 U.S.C. § 1365(a).[3]

## II.   Factual Background

Except as otherwise noted, the following facts are those I consider undisputed and supported by competent evidence upon review of the parties' Local Rule 56 statements of

---

[3] Citizens may not bring suit if a government authority "has commenced and is diligently prosecuting" an action in response to the very violation alleged. 33 U.S.C. § 1365(b)(1)(B). The Municipality previously moved for dismissal partly on this basis, Docket No. 7, and I denied that portion of its motion, Docket No. 20.

facts.[4] *See* Docket Nos. 23-1 ("PSMF"), 28-1 ("DSMF"), 33-1 ("RSMF").

Plaintiffs live in the Municipality's Christian Village Community and are members of the unincorporated Christian Village Fisherman's Association. PSMF ¶ 1. A stormwater outfall located next to the community's fisherman's facilities, which plaintiffs claim is part of an MS4 owned by the Municipality, discharges into the Atlantic Ocean. *Id.* ¶ 2. This outfall has, in the past, discharged raw sewage in addition to stormwater. *Id.* ¶ 3. As a result, the ocean's water quality has deteriorated and the beaches have been consumed by a foul odor, interfering, plaintiffs say, with their recreational and aesthetic interests. *Id.* ¶¶ 3–4. The sewer system in question is not operated by the Municipality and has been out of service for some time. DSMF ¶¶ 1–3. There is thus no discharge into the Atlantic Ocean at present, *id.* ¶ 4, though Loíza's Vice-Mayor told Ortiz that the Municipality intended to make at least the relevant outfall operational again. RSMF ¶ 4; Docket No. 33-2 ¶¶ 1–4.

In August 2009, the Municipality submitted an NOI to seek coverage under the terms of a general permit for small MS4s within Puerto Rico. PSMF ¶ 5; Docket No. 23-3 ¶ 4; *see* Docket No. 23-4 ("General Permit"). The general permit was issued by the EPA on September 21, 2006, and required operators of regulated small MS4s to submit NOIs by February 5, 2007, though late NOIs are not prohibited. General Permit pts. 1.5, 2.1. The Municipality has been officially covered by the permit since, at the latest, December 2009, when the EPA assigned it an individualized permit number. *See* Docket No. 23-3 ¶ 5.

The general permit imposes on covered small MS4 operators the obligation to develop, implement, and enforce an SWMP including at least six minimum control measures; this directive is lifted almost wholesale from the EPA regulations. PSMF ¶¶ 5–6;

---

[4] Local Rule 56 requires parties at summary judgment to submit brief, numbered statements of facts, supported by citations to admissible evidence. It "relieve[s] the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute," *CMI Capital Market Inv. v. González-Toro*, 520 F.3d 58, 62 (1st Cir. 2008), and prevents litigants from "shift[ing] the burden of organizing the evidence presented in a given case to the district court," *Mariani-Colón v. Dep't of Homeland Sec.*, 511 F.3d 216, 219 (1st Cir. 2007). The rule "permits the district court to treat the moving party's statement of facts as uncontested" when not properly opposed, and litigants ignore it "at their peril." *Id.*

General Permit pts. 4.2.2–4.2.3; *see* 40 C.F.R. § 122.34. The third minimum control measure, at issue here, involves the development, implementation, and enforcement of a program to detect and eliminate illicit discharges into the MS4 covered by the permit. PSMF ¶¶ 5, 7; General Permit pt. 4.2.3. More specifically, the permittee operator must, among other things, develop a storm sewer system map; effectively prohibit, through regulatory action, non-stormwater discharges into its MS4, and implement appropriate enforcement procedures; and develop and implement a plan to detect and address non-stormwater discharges to the MS4. General Permit pt. 4.2.3. A completed SWMP must be submitted to the EPA by August 6, 2007, and implemented within five years of the permit's issuance—that is, by September 21, 2011. PSMF ¶ 7; General Permit pt. 4.1.2. Plaintiffs claim that the Municipality failed to meet these deadlines; indeed, according to plaintiffs, the Municipality has still neither developed nor implemented an SWMP. PSMF ¶ 8. Under the permit, a covered operator must provide any interested party with a copy of its SWMP upon request. General Permit pt. 4.5.

## DISCUSSION

Plaintiffs allege that the Municipality has violated, and continues to violate, its NPDES permit by failing to fully develop and implement an SWMP. The facts that plaintiffs must prove to prevail on this claim are straightforward. *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009) (noting that, absent a statutory directive to the contrary, plaintiffs bear the burden of proof). They must show that the Municipality operates under an NPDES permit; that the permit imposes a substantive, time-restricted obligation to either fashion or carry out the terms of an SWMP, or both; and that the Municipality has not yet taken a required action. Accordingly, they claim that those facts, among others, are undisputed, and that they are therefore entitled to judgment as a matter of law. The Municipality does not affirmatively contest plaintiffs' version of the facts, arguing instead that they have not produced enough competent evidence to establish the absence of a genuine issue of material fact.

## I.    Material Properly Considered on Summary Judgment

The Municipality admits that it has a permit and that the permit requires an SWMP, Opp. 7–8; plaintiffs thus need prove only that no SWMP has been developed. They assert as much in their statement of facts, PSMF ¶ 8, but as evidence in support of that assertion offer only Ortiz's own declaration, which reads, in relevant part: "As of this date the Municipality of Loíza has not developed the Storm Water Management Plan (SWMP) required under Part 4 of its NPDES Permit or implemented the control measures required by that permit." Docket No. 23-2 ¶ 6. The Municipality argues that this statement by Ortiz is not "admissible," and that therefore plaintiffs' assertion is totally lacking in evidentiary support. Opp. 8. I agree.

On summary judgment, a party asserting that a particular fact is undisputed must support that assertion "by citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). All materials relied on to support a factual position must be admissible as evidence, *Horta v. Sullivan*, 4 F.3d 2, 8 (1st Cir. 1993), or capable of being reduced to an admissible form, *Celotex*, 477 U.S. at 324; s*ee* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."). In particular, when affidavits or declarations are used as support, they "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4); *see also* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").

The relevant portion of Ortiz's declaration does not meet these requirements. While the declaration concludes with a general avowal of personal knowledge, it is difficult to conceive how Ortiz could in fact personally know—based, that is, on his own sensory

perception, rather than on hearsay—that the Municipality has not developed its SWMP. *See* 27 Charles Alan Wright & Victor James Gold, Federal Practice and Procedure § 6023 (2d ed. 2007). Ortiz does nothing to persuade that such skepticism is unwarranted; he "makes no mention of how he came to have personal knowledge of the facts contained in [his declaration], nor does he affirm . . . that he would be able to testify to [those] facts . . . at trial." *Hoffman v. Applicators Sales & Serv., Inc.*, 439 F.3d 9, 16 (1st Cir. 2006); *see also Quinones v. Buick*, 436 F.3d 284, 290–91 (1st Cir. 2006). Simply put, Ortiz's conclusory affirmation of personal knowledge, standing alone, is insufficient. *See Perez*, 247 F.3d at 316 ("Although the statements purport to be based on personal knowledge, they are totally lacking in specificity."). And neither the rest of his declaration nor common sense provides a reasonable basis for the inference that he is personally aware of the SWMP's status. *See, e.g.*, *United States v. Doe*, 960 F.2d 221, 223 (1st Cir. 1992) (finding the testimony of a shop owner as to the place of an inventory item's manufacture admissible, despite a lack of foundational testimony, because a reasonable tier of fact could infer that the shop owner had personal knowledge).

Moreover, it is not entirely clear that Ortiz's claim of personal knowledge even embraces the particular assertion at issue. Ortiz does not aver merely that his declaration as a whole is based on personal knowledge, but also, in the same sentence, that it "is true and correct to the best of my knowledge, information and belief." This is problematic. The latter avowal by itself would plainly be inadequate, *see López-Carrasquillo v. Rubianes*, 230 F.3d 409, 414 (1st Cir. 2000), and there is no indication as to which portions of the declaration are covered by which purported basis for verification. Even if I were generally inclined to credit Ortiz's affirmation of personal knowledge, I am unwilling to assume that it applies in particular to the statement that the Municipality's SWMP has not yet been developed or implemented. *See Burniac v. Wells Fargo Bank, N.A.*, No. 12–CV–12741, WL 401018, at *3 (E.D. Mich. Jan. 28, 2015). Ortiz cannot indiscriminately certify his declaration both on personal knowledge and, what is a less exacting standard, on information and belief, and at

summary judgment, when it is convenient, rest solely on the former.

Because Ortiz's declaration is inadequate, there is, in effect, nothing to support plaintiffs' assertion that the Municipality has not developed and implemented an SWMP. And because the program's nonexistence is a vital element of their claim, plaintiffs are not entitled to summary judgment.

## II.     Plaintiffs' Arguments

Plaintiffs, in their reply, do not directly respond to the Municipality's argument that their statement of purportedly uncontested facts is largely unsupported by admissible evidence. They, do, however, make two related arguments that must be addressed. They argue, first, that the Municipality should be deemed to have admitted the so-called facts contained in their Local Rule 56 statement, including the assertion that no SWMP has been developed or implemented, because the Municipality failed to support its objections to the statement with citations to the record. Reply 2–3. Second, they argue that if in fact the Municipality *has* developed an SWMP, it should simply say so and produce it, rather than sitting on its hands and asking plaintiffs to prove a negative. Reply 4.

In making these arguments, plaintiffs misapprehend the allocation of burdens upon a motion for summary judgment. Because it is they who seek summary judgment, plaintiffs must demonstrate off the bat that the record reveals the absence of a genuine dispute; only once this hurdle is overcome must the nonmoving party attempt to show that there remains a factual issue requiring trial. *See Plumley*, 303 F.3d at 368. Plaintiffs have failed to discharge their initial duty through admissible evidence, and the Municipality therefore has no obligation to produce or point to evidence of its own. Relatedly, facts contained in a Local Rule 56 statement are to be deemed admitted when not properly controverted through citation to the record *only if* the facts themselves are supported, in the first instance, by evidence properly considered on summary judgment. *See* D.P.R. Civ. R. 56(e). Given the previous discussion of Ortiz's declaration, plaintiffs' complaint that the Municipality has not grounded its objections in competent evidence calls to mind the pot and the kettle.

I am mindful of the epistemological difficulty plaintiffs face in producing evidence of the SWMP's nonexistence; it is not unreasonable for plaintiffs to believe that the Municipality can show that it has developed an SWMP more easily than plaintiffs can show the reverse. *See* 21B Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure § 5122 (2d ed. 2005) (noting that courts often, for policy reasons, adjust the default burden of proof by requiring the party with superior access to evidence to produce it). But plaintiffs have cited no authority for the proposition that the defendant in a CWA citizen suit should be required to prove that it has complied with the terms of its NPDES permit, either in all cases or where, as here, the permit imposes an affirmative duty, such that noncompliance must be proven by negative evidence. Nor have they made any coherent policy argument for tinkering with the default rule that plaintiffs bear the burden of proof across the board. *See Gross*, 557 U.S. at 177.

I am satisfied that no tinkering is necessary. First, I see no meaningful distinction between what plaintiffs must show here—that the Municipality has not developed an SWMP—and what scores of CWA plaintiffs must show in citizen suits alleging the unauthorized discharge of pollutants—that the defendant is not covered by an NPDES permit. *See, e.g.*, *Sierra Club v. El Paso Gold Mines, Inc.*, 421 F.3d 1133, 1142 (10th Cir. 2005) (stating that the plaintiff must prove, among other things, that the defendant lacks a permit); *Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993, 1008 (11th Cir. 2004) (same).

Moreover, to the extent there is a rule that shifts the burden of proof to the party with better access to information, it "is far from being universal, and has many qualifications upon its application." *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 60 (2005) (quoting *Greenleaf's Lessee v. Birth*, 31 U.S. (6 Pet.) 302, 312 (1832)). In *Schaffer*, a case concerning the Individuals with Disabilities in Education Act, the Supreme Court declined to shift the burden of proof to the party naturally in possession of relevant evidence, reasoning that the statute provided potential plaintiffs a route for obtaining the necessary information. *Id.* at 60–61. Here, the Municipality is obligated under its permit to make its SWMP available for

Ramón Ortiz-Osorio v. Municipality of Loíza, Civil No. 13-1352 (BJM)                                        11

public inspection. Had plaintiffs requested a copy of the SWMP and received no response from the Municipality, and produced at summary judgment a declaration detailing their fruitless efforts, it might well be appropriate to require that the Municipality produce some affirmative evidence of the program's existence. But plaintiffs do not suggest that they made any attempt to obtain the relevant information from the Municipality, either by requesting access to its SWMP or, after initiating suit, through discovery, for which, I note, they have had ample opportunity. Assuming for the moment that their allegations are true, plaintiffs could have, and should have, obtained proof of the Municipality's dilatory conduct through interrogatory, deposition, and/or request for admission, rather than relying solely on the hollow say-so of Ortiz.

Because they bear the ultimate burden of proof, plaintiffs cannot obtain summary judgment absent conclusive evidence as to every element of their claim, *Torres Vargas*, 149 F.3d at 35, including the Municipality's failure to develop its SWMP. They could not prevail at trial with no evidence on that point, or with only Ortiz's foundationless testimony—that is, the functional equivalent of no evidence. *See* Fed. R. Evid. 602. They therefore cannot prevail here.

## CONCLUSION

For the reasons above, plaintiffs' motion for partial summary judgment is **DENIED**.

**IT IS SO ORDERED.**
In San Juan, Puerto Rico, this 19th day of February, 2015.

*S/ Bruce J. McGiverin*
BRUCE J. MCGIVERIN
United States Magistrate Judge