IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**RAMON ORTIZ OSORIO**, *et al.*,

    Plaintiff,

    v.

**MUNICIPALITY OF LOIZA**,

    Defendant.

Civil No. 13-1352 (BJM)

## OPINION AND ORDER

Ramon Ortiz Osorio, Eric Cruz Negron, and Jose M. Landrau brought this action against the Municipality of Loíza ("Municipality"). Plaintiffs, alleging they have prevailed by settlement in the federal-court action, seek a total of **$ 34,549.21** in attorney's fees and costs from defendant pursuant to the attorney's fee provision of the Federal Water Pollution Act ("Clean Water Act" or "CWA"), 33 U.S.C. § 1365(d). Docket No. 60. Defendants opposed. Docket No. 61. The case is before me on consent of the parties. Docket Nos. 12, 13. For the reasons set forth below, the motion is **GRANTED IN PART**.

### FACTUAL AND PROCEDURAL HISTORY

Congress enacted the Clean Water Act in 1972 to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). Under the CWA, pollutants generally may not be discharged into the waters of the United States without a National Pollutant Discharge Elimination System ("NPDES") permit. 33 U.S.C. §§ 1311(a), 1342.

Plaintiffs are members of the Christian Village Fishermen's Association and residents of the Christian Village Community in Loíza, Puerto Rico. Compl. ¶ 6. The Municipality owns and operates a small municipal storm system ("MS4") serving Loíza, including the Christian Village Community. Compl. ¶¶ 10–11. Defendant operates the MS4 pursuant to NPDES General Permit number PPR040051. Compl. ¶ 17.

Plaintiffs alleged they were affected by storm water discharge originating from one of the outfalls of the storm sewer system owned by the Municipality. In addition to storm water, this outfall receives raw sewage from multiple sources and is discharged directly into the Atlantic Ocean. Plaintiffs allege the discharge has severely degraded water quality and marine ecosystems in the surrounding beaches, and as a result, plaintiffs can no longer use and enjoy those beaches. Compl. ¶¶ 7–8.

The NPDES permit requires the Municipality to implement six measures designed to reduce the discharge of pollutants from the MS4 into navigable waters, including the development and implementation of a public education program, programs to address storm water runoff from construction activity and development projects, and a storm water management plan ("SWMP"). Compl. ¶¶ 18–19. The permit requires all owners and operators of small MS4s in Puerto Rico to submit their SWMP to the Environmental Protection Agency ("EPA") by August 2007, Compl. ¶ 20, and all programs and requirements in the permit had to be implemented by November 7, 2011. Compl. ¶ 21.

Plaintiffs filed this action on May 7, 2013. Docket No. 1. The complaint alleges that defendant failed to comply with the NPDES permit requirements because no SWMP had been developed and none of the six control measures had been implemented. Compl. ¶ 23. Plaintiffs sought declaratory relief, injunctive relief, the imposition of civil penalties, and an award of costs for defendant's violation of the Clean Water Act. In May 2016, the parties settled. Docket No. 48.

## DISCUSSION

I.   **Fed. R. Civ. P. 54 ("Rule 54")**

The Municipality argues plaintiffs waived their claim for attorney's fees by filing a belated request nine days after the fourteen-day time limit established by Rule 54(d)(2)(B)(i), and therefore the court must dismiss plaintiffs' request. However, Rule 54 states that the fourteen day time limit applies unless a court order provides otherwise. Rule 54(d)(2)(B).

The Municipality and plaintiffs negotiated a Consent Decree in this case. Docket No. 48. The negotiation included a specific agreement that allowed plaintiff to file his Motion for Attorney's Fees within 30 days from the effective date. *Id.* at 15. This agreement was approved and entered as an order of the Court on July 27, 2015, Docket No. 59, giving plaintiffs until August 26 to file their application for attorney's fees. That motion was filed August 21, well within the time limit agreed upon by the parties. As such, this Motion is not barred by Rule 54.

**II.     Prevailing Party**

Plaintiffs seek attorney's fees and costs due to them as prevailing parties pursuant to the Clean Water Act. *See* 33. U.S.C. § 1365(d) ("The court, in issuing any final order in any action brought pursuant to this section, may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such award is appropriate."). Under § 1365(d), it is necessary that a party achieve some degree of success on the merits to obtain attorney's fees. *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 682 (1983).

A "prevailing or substantially prevailing" party is one that achieves material alteration of the legal relationship between itself and the defendant and has "succeeded on any significant issue in litigation which achieved some of the benefit the party sought in bringing suit." *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791–92 (1989) (internal quotations omitted); *see Me. Sch. Admin. Dist. No. 35 v. R.*, 321 F.3d 9, 15 (1st Cir. 2003) (citing *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dept. of H & HR*, 532 U.S. 598, 603 (2001)) ("[A] party may be considered 'prevailing' even without obtaining a favorable final judgment on all (or even the most crucial) of her claims.")); *United States v. Comunidades Unidas Contra La Contaminacion*, 204 F.3d 275 (1st Cir. 2000). So long as the plaintiffs achieve a necessary degree of success on some claims, the denial of the full range or originally requested relief is not a basis for denying a fee award.

*Gay Officers Action League v. P.R.*, 247 F.3d 288, 293 (1st Cir. 2001) (citing *Tex. State Teachers*, 489 U.S. at 792–93).

Under the Clean Water Act, a "prevailing party" is not limited to a victory only after entry of a final judgment following a full trial on the merits. *Sierra Club v. City of Little Rock*, 351 F.3d 840, 845 (8th Cir. 2003) (citing *Farrar v. Hobby*, 506 U.S. 103, 111 (1992)) (internal citations omitted)). "The fact that [plaintiff] prevailed through a settlement rather than through litigation does not weaken the claim to fees." *Maher v. Gagne*, 448 U.S. 122, 129 (1980). In the context of allowing an award of attorney fees to a prevailing or substantially prevailing party, a party prevails either by obtaining an enforceable judgment or comparable relief through a consent decree or settlement that "directly benefits plaintiff at the time of the judgment or settlement." *Farrar*, 506 U.S. at 111 (citing *Maher*, 448 U.S at 129). Otherwise, the judgment or settlement cannot be said to "affec[t] the behavior of the defendant toward the plaintiff." *Rhodes v. Stewart*, 488 U.S. 1, 4 (1988). Although a consent decree does not always include an admission of liability by the defendant, it nonetheless is a court order that may change the legal relationship between the plaintiff and the defendant, for purposes of prevailing party fee-shifting statutes. *Northeast Iowa Citizens for Clean Water v. Agriprocessors, Inc.*, 489 F. Supp. 2d 881, (N.D. Iowa 2007) (citing *Buckhannon*, 532 U.S. at 604).

Here, the Consent Decree entered by the court substantially and materially alters the legal relationship between the parties in a way that directly benefits the plaintiffs, conferring prevailing party status on plaintiffs. While many provisions of the Consent Decree mandate the Municipality to continue existing efforts towards compliance with its MS4 permit, it also requires the completion of several additional tasks directly benefiting the plaintiffs and the furtherance of the goals of the Clean Water Act. It requires the Municipality to continue the implementation of the SWMP and to prepare and send the plaintiffs a report explaining the current status of implementation of each of the six minimum control measures included in the SWMP on a specific time schedule until the

SMWP is fully or substantially implemented or the EPA approves a new SWMP for the Municipality. Docket No. 48 at 8–9.

Of most immediate direct benefit to the plaintiffs, the Consent Decree also requires the implementation of a Supplemental Environmental Project ("SEP") in lieu of civil penalties whose purpose will be to provide interim measures to mitigate the current problem affecting Christian Village's storm sewer system. *Id.* at 11–12. The SEP requires the Municipality to develop and execute a maintenance program with the purpose of keeping Christian Village's storm sewer system free of raw sewage and sediments. It must do so by using vacuum trucks to remove to the maximum extent possible the scum, waste water, and sludge accumulated in all of Christian Village's storm sewer system on a strict time schedule (within six months of the effective date of the Consent Decree and every six months afterward until the Municipality fully develops, implements, and enforces the program to detect and eliminate illicit discharges established in its SWMP or the Puerto Rico Aqueduct and Sewer Authority (PRASA) constructs and starts operation of a new sewer system for the Christian Village Community.) *Id.* at 12–13.

All of these measures require the Municipality to engage in additional practices to "further the objectives set forth under section 101 of the CWA" and to move the Municipality to "achieve and maintain full or substantial compliance with, and to further the purposes of, the CWA," *id.* at 7:2, particularly the full implementation of the NPDES permit. Specifically, the SEP works to ensure the minimization of waste within the section of the MS4 that runs through Christian Village that could flow into the ocean while the SWMP is being implemented. This was plaintiff's ultimate goal in filing suit against the Municipality. *See* Compl. ¶ 10:25 ("Plaintiffs believe and allege that, without the imposition of appropriate civil penalties and the issuance of an injunction, Defendants will continue to violate the Clean Water Act.").

In negotiating and settling for the SEP instead of requiring the Municipality to pay civil penalties until the SWMP is fully implemented, plaintiffs demonstrate that such a

measure is more appropriate for achieving its ultimate goal. And, by ordering the defendants to develop and fully implement the control measures required by its NPDES permit and establishing a plan to clear waste from the MS4 in the interim, plaintiffs have succeeded in stopping the Municipality from continuing its alleged practice of discharging storm water from its MS4 in such a manner that will result in further violation of the NPDES permit. Accordingly, I find that plaintiffs are the prevailing party for attorney's fees purposes. I turn, then, to the determination of a reasonable fee amount.

### III.     Reasonable Fees

The court has "great discretion in deciding what claimed legal services should be compensated." *Brewster v. Dukakis*, 3 F.3d 488, 492 (1st Cir. 1993). Plaintiffs who substantially prevail may not necessarily recover the totality of their requested fees. *See Culebra Enters. Corp. v. Rivera-Ríos*, 846 F.2d 94, 102 (1st Cir. 1988). Instead, the court calculates a reasonable fee award using the "lodestar" method: a reasonable hourly rate multiplied by the number of hours reasonably spent on the litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Under the lodestar approach, the judge first calculates the time counsel spent on the case, subtracts duplicative, unproductive, or excessive hours, and then applies prevailing hourly billing rates in the community, taking into account counsel's qualifications, experience, and specialized competence. *Gay Officers*, 247 F.3d at 295. Once calculated, "the lodestar represents a presumptively reasonable fee, although it is subject to upward or downward adjustment in certain circumstances." *Lipsett v. Blanco*, 975 F.2d 934, 937 (1st Cir. 1992).

Plaintiffs seek compensation for $33,560.00 in attorney's fees based on 167.8 hours of work, and $989.21 for out of pocket expenses related to the case, for a total of $34,549.21. Docket No. 64. This is reduced from the originally requested $41,199.21. Docket No. 60. Plaintiff's motion is supported by timesheets, a declaration, and a resume for the plaintiffs' attorney, Miguel Sarriera Román ("Román"). Román claims plaintiffs in this case do not have the financial capability of paying attorneys' fees at prevailing market

rates, so he has accepted compensation exclusively for whatever fee award may result from the litigation on a contingent basis. Docket No. 60-1 at 3 ¶ 8.

Information on customary rates in the marketplace for similarly situated attorneys must be provided in supporting documentation by the party seeking an award in a fee-shifting context. *See Spooner*, 644 F.3d at 68. Rates must be adjusted under the lodestar method in accordance with reasonable *community* standards. *See Metro. Dist. Comm'n*, 847 F.2d at 19. In addition, the court can use an attorney's standard billing rate as guidance, but it is not bound by it. *See Gay Officers*, 247 F.3d at 296.

Information provided by plaintiffs on customary hourly rates in recent civil-rights cases indicates a range from $100.00 to $250.00 for in-court work, and from $90.00 to $225.00 for out-of-court time. *Cortes-Reyes v. Salas-Quintana*, 806 F. Supp. 2d 470, 476 (D.P.R. 2011) (citing *Rosario-Urdaz v. Rivera-Hernandez*, 451 F. Supp. 2d 305, 309-10 (D.P.R. 2006)). In *Cortes-Reyes,* an attorney who had over 37 years of practice experience and extensive specialized experience in civil-rights litigation was granted an out-of-court hourly rate of $200.00. Román has litigated specialized cases under Section 505 of the CWA for 23 years. Docket No. 60 at 9. The hourly rate offered by the defendant in his last settlement regarding attorney's fees in a Clean Water Act case was $200.00. Docket 60-1 at 3 ¶ 10. Because defendants do not dispute this rate, this is the rate I will employ for the lodestar analysis.

Defendants oppose the fee motion, arguing that counsel's travel time is not recoverable, block-billing should result in a reduction of the lodestar amount, quarter-of-an-hour billing should result in a severe reduction or disallowance of those hours, generic or vague time entries should be reduced or eliminated, all hours claimed for work on non-prevailing issues and the Motion for Attorney's Fees should be disallowed, and the court should consider the "precarious economic situation that the Municipality, as well as many other municipalities, is facing." Docket No. 61 at 9–12. I will address in turn each of

defendant's arguments for downward reductions in the fee award, using the timesheets provided by plaintiffs. Docket No. 60-1.

### *Travel Time*

The Municipality objects to Román's entries including time spent traveling, totaling 29.30 hours (defendant's opposition incorrectly counts 28.3 hours, Docket No. 61). The First Circuit accepts a reduced rate for travel time when granting attorney's fees but does not typically eliminate these hours altogether. *See Hutchinson ex rel. Julien v. Patrick*, 636 F.3d 1, 15 (1st Cir. 2011) ("Travel is often a necessary incident of litigation, and an attorney's travel time may be reimbursed in a fee award."); *Maceira v. Pagan*, 698 F.2d 38, 40 (1st Cir. 1983) (court provided a 50% reduction in the attorney's reasonable regular rate for travel time).

Plaintiffs concedes that the objection to travel time is partially reasonable. Plaintiffs' billing does not separately itemize travel and the work done upon arrival, so travel time is not billed at a reduced rate. As such, plaintiffs agrees to reduce by 50% all hours related to traveling, resulting in a 14.65 hour reduction. Docket No. 64 at 4. This across-the-board reduction is a reasonable compromise, and I accept it when calculating the lodestar amount.[1]

### *Out of Pocket Expenses*

The additional out-of-pocket expenses include filing fees ($400.00), copies ($7.95), mail ($55.96), and millage and tolls ($525.30). The First Circuit holds that reasonable expenses necessary for the prosecution of a case are ancillary to and may be incorporated as part of a fee award under a prototypical federal fee-shifting provision. *Hutchinson ex rel. Julien,* 636 F.3d 1 at 17 (citing *Palmigiano v. Garrahy*, 707 F.2d 636, 637 (1st Cir. 1983)). As such, I find all of Román's out-of-pocket expenses recoverable as necessary for success in the litigation.

---

[1] Reducing the hourly rate by 50% and retaining the original number of hours results in the same award.

*Quarter-Hour Billing*

Defendant challenges Román's practice of billing "virtually every time entry" in quarter-hour increments rather than in tenths of an hour, and argues this should result in a severe reduction or disallowance of those hours. Docket No. 61 at 10. However, all of the entries were billed in tenth of an hour increments. As such, none of the hours will be reduced or disallowed.

*Block-Billing*

Defendants argue that block-billing makes it more difficult to determine whether the amount of time spent on various tasks was reasonable, citing *Davis v. Perry*, 991 F. Supp. 2d 809, 835–36 (W.D. Tex. 2014), and justifies an across-the-board reduction in block-billed hours to offset the effects of block-billing. To this end, the First Circuit affirmed a reduction in the fee request due to block billing when the plaintiff's attorney "fail[ed to] adequately describe the tasks for which the time was expended." *See, e.g.*, *Torres-Rivera v. O'Neill-Cancel*, 524 F.3d 331, 340 (1st Cir. 2008).

While Román's entries are billed based on how much daily time was spent working on a case, rather than itemizing the time expended on specific tasks, his entries are quite detailed and adequately describe the tasks for which the time was expended. For example, Román's time entry for September 25, 2013, explains he reviewed case law on discovery and substantive and jurisdictional requirements for a motion to dismiss for lack of subject-matter jurisdiction, which took 7.20 hours. Docket No. 60 at 11. There does not seem to be any other way to make this more specific without requiring the attorney to indicate exactly what case law he reviewed or what his findings were, which is not necessary for the purposes of providing an adequate explanation of what he has done. As such, a global reduction for block billing is unwarranted.

*Generic or Vague Time Entries*

Next, the Municipality challenges numerous timesheet entries for being too vague for the court to allow the hours claimed. A court may adjust the hours to account for time

records that are "too generic," causing them to be "insufficient as a practical matter to permit a court to answer questions about excessiveness, redundancy, and the like." *Colón Vázquez v. Puerto Rico*, No. 3:14-cv-01644, 2015 WL 847291, at *2 (D.P.R. 2015) (citing *Hensley*, 461 U.S. at 434). The *Grendel's Den* standard requires attorneys to keep contemporaneous and detailed time records, except in extraordinary circumstances. *Grendel's Den, Inc. v Larkin*, 749 F.2d 945, 951 (1st Cir. 1984). Plaintiffs are "not required to record in great detail how each minute of his time was expended." *Hensley*, 461 U.S. at 437. They should, however, identify the general subject of the time being billed. *Id.* at 455. The problem with imprecise records is that "they fail to allow the paying party to dispute the accuracy of the records as well as the reasonableness of the time spent." *Lipsett*, 975 F.2d at 938 (internal citation and quotation omitted) (alteration in original).

Records will be sufficient and compensable if the subject matter and nature of the tasks are either explicitly stated or readily ascertainable based on other information contained in the records. *Parker v. Town of Swansea*, 310 F. Supp. 2d 376, 392 (D. Mass. 2004). When there is no interrelation between the entries and the dates or surrounding entries, a full account of the task performed will be required. *Walsh v. Bos. Univ.*, 661 F. Supp. 2d 91, 106 (D. Mass. 2009). References to telephone calls should not require extensive details to be compensable. *Parker*, 310 F. Supp at 392. A court must be cognizant of attorney-client privilege when attorneys are describing a task such as an email or a conference with the client; therefore, if the court can deduce the general reason by examining the date of the task surrounding it, it will be considered reasonable. *Walsh*, 661 F. Supp. 2d at 117.

The Municipality contests Román's entries that have "no explanation whatsoever, just mentioning [a] phone call [or] review of dockets." Docket No. 61, p. 11. It cites *Torres-Rivera*, but this does not further its position. *Torres-Rivera v. O'Neill-Cancel*, 524 F.3d 331 (1st Cir. 2008). In that case, the court found generic descriptions such as "telephone call," "review court order," "review correspondence," "work on brief," and "conduct legal research" far too vague to provide guidance to the court in evaluating the requested fees.

*Id.* at 340. However, a review of the time records in this case shows that every phone call includes the name of the person and the matter discussed, every entry explaining a review of the docket indicates the docket number itself being reviewed, every entry regarding legal research indicates what the research entailed, and so forth. It is difficult to imagine more detail being required for these time entries. As such, they are not too vague or generic and will be considered in the lodestar amount for the award of attorney's fees.

***Non-Prevailing Motions***

In fashioning the fee award lodestar, the court may adjust the hours claimed to eliminate time that was unreasonably, unnecessarily, or inefficiently devoted to the case. Subject to principles of interconnectedness, the court may disallow time spent in litigating failed claims. *Torres-Rivera*, 524 F.3d at 336 (citing *Hensley*, 461 U.S. at 434; *Lipsett*, 975 F.2d at 940-41). If the claims on which plaintiff lost were unrelated to the successful ones, no fees may be awarded for the work on the unsuccessful claims. If, however, the losing claims included "a common core of facts" or were "based on related legal theories" linking them to the successful claim, the award may include compensation for legal work performed on the unsuccessful claims. *Garrity v. Sununu*, 752 F.2d 727, 734 (1st Cir. 1984) (quoting *Hensley*, 461 U.S. at 435). After determining the number of reasonable hours and the reasonable rate, the court must still account for other considerations that may lead it to adjust the lodestar upward or downward, based on such factors as the results obtained and "the time actually required for the efficacious handling of the matter." *Hensley*, 461 U.S. at 434; *Torres-Rivera*, 524 F.3d at 331 (citations omitted).

Defendant argues that the hours expended on the response to its Motion to Dismiss (Docket No. 7) and the Motion for Summary Judgement filed by plaintiffs (Docket No. 23) should be stricken because plaintiffs did not prevail. The Municipality's Motion to Dismiss was granted in part and denied in part. While including the mayor as a defendant was found to be redundant, I found that the plaintiffs were not precluded by the diligent prosecution bar of the CWA and thus plausibly stated a claim for relief against the Municipality (Docket

No. 20), who entered the settlement with plaintiffs. As such, time spent working on the opposition to the motion to dismiss will be counted towards the lodestar because elimination of the mayor as a defendant did not impede plaintiffs' overall success in settlement. Plaintiffs agree that their Motion for Summary Judgment failed and did not contribute to their overall success, so hours spent working on this motion should be stricken. Docket No. 64 at 5. I agree and will strike this from the lodestar amount.

The Municipality argues hours invested in settlement negotiations are not recoverable, as they are not spent litigating controversies. The court has the discretion to adjust hours "up or down, to reflect other considerations." *United States v. One Star Class Sloop Sailboat built in 1930 with hull no. 721, Named "Flash II,"* 546 F.3d 26, 38 (1st Cir. 2009) (quoting *Coutin v. Young & Rubicam P.R., Inc.*, 124 F.3d 331, 337 (1st Cir. 1997)). Settlement negotiations are not normally considered in the lodestar calculation. *Janney Montgomery Scott LLC v. Tobin*, 692 F. Supp. 2d 192, 198 (D. Mass. 2010) (awarding fees for time spent negotiating runs counter to the institutional policy favoring settlement); *see also St. John's Organic Farm v. Gem County Mosquito Abatement Dist.*, 574 F.3d 1054, 1064 (Tallman, J., concurring) ("Courts should not be interpreting attorney's fee requirements in such a way as to discourage settlement."). The First Circuit adopts this view, agreeing there is a "strong public policy in favor of settlements, particularly in very complex and technical regulatory contexts . . . ." *Comunidades Unidas*, 204 F.2d at 280. As such, hours spent negotiating and drafting the agreement, totaling 25 hours, will be deducted from the lodestar amount. This reduces the requested attorney's fee award by $5,000.00.

Lastly, the Municipality argues that time spent on the Motion for Attorney's fees should be discounted from the lodestar because the time claimed is extravagant and exaggerated for this type of motion. Docket No. 61 at 12. However, defendant fails to demonstrate how this time is extravagant or exaggerated or how much time a motion like this should take. The burden is on the defeated party to demonstrate circumstances that are

appropriate to overcome the presumption in favor of the prevalent party. Charles Alan Wright, *et al.*, 10 Federal Practice & Procedure § 2668 (3d ed., 2015). Román explains this was his first time drafting such a motion and this was the amount of time it took. With no available comparison, I am inclined to believe him and afford these hours towards the attorney's fees award. *See Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1254 (10th Cir. 2000) ("An award of reasonable attorney's fees may include compensation for work performed in preparing and presenting the fee application.").

### *The Municipality's "Precarious Financial Situation"*

As previously stated, the court has broad discretion in awarding reasonable and appropriate attorney's fees. *See* 33. U.S.C. § 1365(d) ("The court, in issuing any final order in any action brought pursuant to this section, may award costs of litigation . . . whenever the court determines such award is appropriate."). The Municipality asks for its financial condition to be considered. Docket No. 61 at 12. The Municipality provides no case law to support the idea that its ability to pay should be a factor in awarding attorney's fees to a prevailing party. While I understand the economic crisis and hardship the Municipality is undergoing, Román's work in ensuring plaintiffs' success must be compensated at a reasonable rate. Plaintiffs have provided evidence as to the reasonableness of the amount requested and have voluntarily reduced the amount. The policy considerations underlying the attorney's fees provision of the Clean Water Act further support the idea that the government must bear the costs for its alleged failure to enforce environmental regulations that result in detrimental impacts on its citizens.

## CONCLUSION

For the foregoing reasons, the motion is **GRANTED IN PART**. Plaintiff's motion seeks a total of **$34,549.21.** The following adjustment is made:

1. Deduction for settlement negotiations: **-$5,000.00** of the total hours billed by Miguel Sarriera Román.

After this downward adjustment, the total award amount is **$29,549.21** in costs, fees, and litigation expenses.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 14th day of June, 2016.

*S/ Bruce J. McGiverin*
BRUCE J. MCGIVERIN
United States Magistrate Judge